IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISON

_____

| | |
|---|---|
| **PAUL E. FLOCH,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    No. 14-cv-02712-STA-tmp |
| | ) |
| **JPMORGAN CHASE BANK, N.A., and** | ) |
| **WILSON & ASSOCIATES, P.L.L.C,** | ) |
| | ) |
|     **Defendants.** | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court is the motion to dismiss filed by defendant Wilson & Associates, P.L.L.C ("Wilson") on October 30, 2014. (ECF No. 11.) Defendant JPMorgan Chase Bank, N.A. ("Chase") joined in Wilson's motion to dismiss and filed its own memorandum in support on November 18, 2014. (ECF No. 17.) Plaintiff Paul E. Floch ("Floch") filed responses in opposition to these motions to dismiss on November 14 and December 5, 2014. (ECF Nos. 16, 21.) For the reasons below, it is recommended that both Chase's and Wilson's motions to dismiss be granted.

### I. PROPOSED FINDINGS OF FACT

This case originated on February 1, 2012, as an action brought by Chase in Shelby County Chancery Court to remove a cloud on the title to real property owned by Floch and his wife,

located at 1369 Trail Ridge Lane in Cordova, Tennessee. (ECF No. 12-3, State Court Docket.) Chase was assigned the deed of trust to the property in April 2008. (ECF No. 12-1, State Court Compl. ¶ 7.) Chase claimed the Flochs became delinquent on their loan and that Chase referred the loan for foreclosure in November 2011. (Id. ¶ 10.) According to Chase, the Flochs owed a principal sum of $124,860.59 plus interest, attorney's fees, title expenses, and late charges and costs. (Id. ¶ 22.) Chase claimed that the Flochs and several other individuals then "commenced a series of mailings and filings in the public record with the clear and express intent to frivolously, illegally and fraudulently delay the nonjudicial foreclosure of the real property." (Id. ¶¶ 12-19, 23-25, 28, and 29.) Chase sought a declaration that all of the liens and interests created through the recordations were null and void, that Chase's deed of trust was enforceable, that Chase's deed of trust was superior to that of any other defendants, and that Floch cease and desist from further recordations. (Id. ¶ 30.)

The state court granted Chase summary judgment, ordering all of the relief requested by Chase. (ECF No. 12-3, State Court Order Granting Summary Judgment.) The state court found that the Flochs became delinquent on their loan secured by the deed of trust held by Chase, and that Chase had referred the

loan for foreclosure in November 2011. (Id. ¶ 9.) On November 22, 2011, Floch conveyed the property to himself and his wife via corporate form warranty deed. (Id. ¶ 11.) By that conveyance, it appeared that the Flochs intended to take title to the subject property as tenants by the entirety. (Id.) On or about January 4, 2012, the Flochs and two other individuals acting under the titles "notary acceptor" and "trustee" commenced a fraudulent series of mailings and filings in the public record. (Id. ¶ 12.) The documents filed included the following:

- "Affidavit and Actual and Constructive Notice," which purported to ostensibly incorporate select provisions of federal and state law to void the warranty deed, deed of trust and assignment. This document was filed for record in the Register's Office on January 6, 2012, as Instrument No. 12002239. (Id. ¶ 13.)
- "Deed of Revocation," which purported to revoke and void Chase's deed of trust and discharge Chase as the rightful beneficiary thereunder. This document was filed for record in the Register's Office on January 5, 2012, as Instrument No. 12001666. (Id. ¶ 14.)
- "Common Law Lien and Deed," which purported to incorporate select provisions of the Constitution of

the United States and the Uniform Commercial Code to attach a 100-year lien on the subject property in the amount of $361,520.34 in favor of Floch. This document was filed for record in the Register's Office on January 5, 2012, as Instrument No. 12001667. (Id. ¶ 15.)

- "Notice of Removal of Trustee/Actual and Constructive Notice," which purported to incorporate select provisions of the Uniform Commercial Code and international contract law to revoke, cancel, void, and rescind the rights of Chase (as well as its representative and attorneys) under the deed of trust owned and held by Chase. This document was filed for record in the Register's Office on January 5, 2012, as Instrument No. 12001669. (Id. ¶ 16.)

- "Affidavit of Notice of Appointment of Trustee," which purported to incorporate select provisions of the Uniform Commercial Code and international contract law to appoint a separate individual as the trustee under Chase's deed of trust. This document was filed for record in the Register's Office on January 5, 2012, as Instrument No. 12001670. (Id. ¶ 17.)

- "Affidavit of Notice of Revocation of Power of Attorney," which purported to allege fraud, inducement, misrepresentation, entrapment, and nondisclosure on the part of Chase (as well as its representatives and attorneys). This document was filed for record in the Register's Office on January 5, 2012, as Instrument No. 12001668. (Id. ¶ 18.)

The state court found that the Flochs were in default under the terms of the subject deed of trust and note, having failed to make the scheduled payments due August 1, 2011, and thereafter. (Id. 19.) The state court found that the Flochs owed Chase $124,860.59 in unpaid principal, together with accrued interest thereon from the date of default until paid, a reasonable attorney's fee, title expenses, late charges, and costs. (Id. ¶¶ 19-20.) The state court also found that the registration of any document purporting to release the deed of trust was in error and appeared to have been done in an attempt to discharge the subject deed of trust on the property, creating a cloud on Chase's title. (Id. ¶ 22-23, 25.) The state court found that Chase's deed of trust had priority over that of all other encumbrances. (Id. ¶ 24.) The state court ordered that all documents filed and recorded by the Flochs be set aside, cancelled, and declared null and void; that any alleged liens

and all interests of the Flochs were extinguished and inferior to Chase's lien, and upon completion of a foreclosure of the property, the liens held or claimed by the Flochs would not remain as encumbrances on the property; that Chase's deed of trust was fully enforceable according to its terms; that Chase's deed of trust was superior and paramount to the interests of the Flochs in the property; that the Flochs cease and desist from all further frivolous filings and liens against the subject property; and that costs be assessed against the Flochs. (Id. at 6-7.)

The Flochs did not file an appeal of the state court judgment. Instead, Paul E. Floch filed a complaint in this court on September 16, 2014, naming Chase and Wilson as defendants and seeking damages for violations of, among other claims, the Fair Debt Collections Practices Act ("FDCPA"), the Tennessee Consumer Protection Act ("TCPA"), and the Tennessee Collection Service Act ("TCSA"). (ECF No. 1, Compl.) Floch also seeks injunctive relief, declaratory relief, and damages. (Compl. ¶ 2.) In his 49-page complaint, Floch sets forth numerous factual allegations and asserts four causes of action. For instance, Floch alleges that "the mortgage note which purportedly secures real property of which Floch has equitable and possessory interest, that was purportedly made in favor of

the Lender, . . . has been discharged either by 'charge off' against federal taxes or by mortgage default insurance proceeds . . . ." (Compl. ¶ 18.) Floch also alleges that "the behavior of CHASE BANK implies they are the creditor and NOT a debt collector." (Compl. ¶ 19.) Floch claims that he "has seen no evidence that CHASE BANK is the holder of said note, nor has Floch seen any evidence that CHASE BANK is the bona fide 'Assignee' of said note." (Compl. ¶ 23.) Floch asserts that "debt collectors are not entitled to the collateral," and that Chase and Wilson have violated the FDCPA by sending notification of foreclosure proceedings to him. (Compl. ¶ 24.) Floch alleges that Chase and Wilson "should know they do not have the legal right to collect" any amount of money from Floch. (Compl. ¶ 32.) Floch also alleges that he has not received a response to a debt validation letter he sent to Chase. (Compl. ¶ 39.) Floch further claims that Chase is "without the combination of the original NOTE and DEED of TRUST." (Compl. ¶ 40.) Floch alleges that Chase and Wilson "have used the U.S. Postal Service in a fraudulent attempt to collect a debt from Floch, in violation of . . . federal statutes and state codes." (Compl. ¶ 43.) As for his causes of action, Floch first demands that Chase be ordered to provide a written verified accounting of all sums he owes to Chase. (Compl. ¶¶ 52-57.) Second, Floch alleges

that Chase and Wilson have violated the FDCPA as debt collectors by "engaging in conduct, the natural consequences of which is to harass, oppress, or abuse," "making false statements of material fact," and "using unfair and unconscionable means in connection with the collection of an alleged debt." (Compl. ¶¶ 58-74.) Third, Floch claims that Chase and Wilson are in violation of the TCPA by "using false representations or deceptive means to collect a debt" and that they are in violation of the TCSA by "threatening to hold a 'non-judicial foreclosure' action for seizing collateral in a debt collection activity." (Compl. ¶¶ 75-79.) Finally, Floch alleges that Chase and Wilson have violated a consent order agreed to by Chase and accepted by the Comptroller of Currency of the United States of America. (Compl. ¶¶ 80-83.)

Defendants now move to dismiss all claims against them, arguing that Floch's claims in this court are barred by claim and issue preclusion. (ECF Nos. 12, 17.) Wilson attached as exhibits to its motion copies of the state court complaint, the state court docket, and the state court order granting summary judgment. (ECF Nos. 12-1, 12-2, 12-3.) Wilson also argues that Floch's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under

12(b)(4) and (5) for insufficient process and insufficient service of process.

## II. PROPOSED CONCLUSIONS OF LAW

**A. Standard of Review**

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing that the pleader is entitled to relief. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." HDC, LLC. v. City of Ann Arbor, 674 F.3d 608, 611 (6th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

In considering a motion to dismiss under Rule 12(b)(6), the court views the complaint in the light most favorable to the nonmovant, accepts the allegations as true, and draws all reasonable inferences in favor of the nonmovant. KSR Int'l Co. v. Delphi Auto. Sys., No. 12-2063, 2013 WL 1749336, at *1 (6th

Cir. Apr. 23, 2013) (citing Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)). "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are the recitations of the elements of a cause of action sufficient." Handy-Clay v. City of Memphis, No. 10-2927-STA-tmp, 2013 WL 2948442, at *4 (W.D. Tenn. June 14, 2013) (quoting Hensley Mfg. v. ProPride, Inc., 670 F.3d 603, 609 (6th Cir. 2009)); see also Infection Prevention Techs. v. UVAS, LLC, No. 10-cv-12371, 2011 WL 4360007, at *24 (E.D. Mich. Sept. 19, 2011) ("[P]laintiff asserts that Defendants' 'actions were in bad faith, willful, wanton.' But these statements are pure legal conclusions insufficient to state a claim upon which relief may be granted.") (internal citations omitted).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). *Pro se* litigants, however, are not exempted from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in

his pleading.") (internal quotation marks omitted); Payne v. Sec'y of Treasury, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.")

"With regard to a motion to dismiss on res judicata grounds, a district court may take judicial notice of other court proceedings without converting the motion into one for summary judgment as long as those proceedings are relied on not for the truth of the facts recited there, but for the existence of the opinion." Shafi v. Weidinger, No. 09-10454, 2011 WL

6338864, at *5 (E.D. Mich. Dec. 19, 2011) (citing Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 576 (6th Cir. 2008)).

**B.   *Res Judicata* Bars Floch's Complaint**

Pursuant to the full faith and credit statute, "records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken."  28 U.S.C. § 1738.  This court must look to Tennessee law to determine whether the state court judgment has a preclusive effect on Floch's complaint in this court.  Abbott v. Michigan, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738) ("Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state."); see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 85 (1984) (holding that the preclusive effect in federal court must mirror the preclusive effect a state court judgment would have in that state); Notredan, LLC v. Old Republic Exch. Facilitator, 875 F. Supp. 2d 780, 786 (W.D. Tenn. 2012) ("The Court must apply the law of the state of Tennessee to determine what preclusive effect the state court's judgment has on the claims before this court.").  "The doctrine of res judicata, or claim preclusion,

'bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit.'" Coleman v. Indymac Venture, LLC, 966 F. Supp. 2d 759, 775 (W.D. Tenn. 2013) (quoting Lien v. Couch, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)). Under Tennessee law, parties asserting *res judicata* must demonstrate: (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same cause of action was involved in both suits, (4) and that the underlying judgment was final and on the merits. Jackson v. Smith, 387 S.W.3d 486, 491 (Tenn. 2012) (citing Lien, 993 S.W.2d at 56).

The present case is similar to Foster v. Federal National Mortgage Ass'n, No. E2012-02346-COA-R3-CV, 2013 WL 3961193 (Tenn. Ct. App. July 31, 2013). In that case, Chase alleged that the homeowners, the Fosters, defaulted on their mortgage and as a result foreclosed on the Fosters' property. Foster, 2013 WL 3961193, at *1. The property was offered for sale at a public auction, and Chase bought the property. Id. On the same day as the auction, Chase assigned its interest in the property to Federal National Mortgage Association ("Fannie Mae"). Id. Fannie Mae then filed an unlawful detainer action against the

Fosters. Id. Following a hearing, the General Sessions court granted Fannie Mae judgment for possession, and the Fosters failed to file an appeal. Id. The Fosters then filed a separate action against Chase and Fannie Mae, asserting various causes of action including fraud, unjust enrichment, wrongful foreclosure, and conspiracy. Id. Fannie Mae and Chase filed a motion to dismiss, arguing that the Fosters' claims were barred by the doctrine of *res judicata* because the claims should have been raised in the earlier General Sessions unlawful detainer action. Id. The trial court agreed and dismissed the Fosters' action. Id. On appeal, the Tennessee Court of Appeals affirmed the trial court. Id. The appellate court reasoned that each of the causes of action asserted by the Fosters "arose out of the same series of connected transactions" as the previous unlawful detainer suit and that "the [Fosters] could and should have raised the issues pertaining to the alleged wrongful foreclosure in the earlier detainer action." Id. at *1, *4. Therefore, the court concluded that *res judicata* barred the Fosters' claims and affirmed the trial court's dismissal of the complaint. Id. at *5.

Similarly here, the doctrine of *res judicata* bars Floch's claims against Chase and Wilson. First, the underlying judgment was rendered by the Chancery Court, a court of competent

jurisdiction. The second element is also satisfied here, as Chase was the plaintiff and Floch was the defendant in the state court suit. Wilson is in privity with Chase because Wilson was Chase's foreclosure counsel and represented Chase in the state court action. See Wallace v. JP Morgan Chase Bank, N.A., No. 13-13862, 2014 WL 4772029, at *4-5 (E.D. Mich. Sept. 24, 2014) (citing Lintz v. Credit Adjustments, Inc., No. 07-11357, 2008 WL 835824, at *4 (E.D. Mich. Mar. 28, 2008)) (finding that foreclosure attorney was in privity with Chase for purposes of *res judicata*); see also Plotner v. AT&T Corp., 224 F.3d 1161, 1169 (10th Cir. 2000) (finding that law firm defendants in a suit after bankruptcy proceedings were in privity with their clients); Henry v. Farmer City State Bank, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) ("Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of res judicata."); Vacanti v. Apothaker & Assocs., P.C., No. 09-5827, 2010 WL 4702382, at *4-5 (E.D. Penn. Nov. 12, 2010) (finding that attorney-client relationship satisfied privity requirement for purposes of *res judicata*); Pincus v. Law Offices of Erskine & Fleisher, No. 08-81357-CIV, 2010 WL 286790, at *2 n.1 (S.D. Fla. Jan. 19, 2010) (collecting cases that note that

attorneys are in privity with their clients for purposes of *res judicata*); Barany-Snyder v. Weiner, No. 1:06-cv-2111, 2007 WL 210411, at *4 (N.D. Ohio Jan. 24, 2007) (citing Plotner, 224 F.3d at 1169; Zahran v. Frankenmuth Mut. Ins. Co., No. 95-2588, 1997 WL 205381, at *3 (7th Cir. Apr. 22, 1997)) (noting that "[a]ll authority the Court has found holds that attorneys are treated as parties or privies for res judicata purposes").

As to the same cause of action requirement, courts in Tennessee use the "transactional standard" to determine whether the causes of action in two suits are the same for purposes of *res judicata*. Creech v. Addington, 281 S.W.3d 363, 379-80 (Tenn. 2008). Under that standard, "[t]wo suits . . . shall be deemed the same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." Id. at 381. The word transaction is used "in the broad sense," and "connotes a natural grouping or common nucleus of operative facts." Id. at 380 (quoting Restatement (Second) of Judgments § 24 cmt. b.) In this case, just as in Foster, both the state suit and the present claims arise out of the same series of connected transactions – that is, the Flochs' property, their loan, whether the Flochs owe money to Chase and how much, and the validity and priority of Chase's lien on that property. See Foster, 2013 WL 3961193, at

*4; see also Davis v. Williams, No. E2010-01139-COA-R3-CV, 2011 WL 335069, at *2-4 (Tenn. Ct. App. Jan. 31, 2011). Indeed, one of the recordations at issue in the state court action was Instrument No. 12001668, which purported to allege fraud, inducement, misrepresentation, entrapment, and nondisclosure on the part of Chase, as well as its representatives and attorneys. The Flochs could and should have litigated these allegations along with the many others contained in their numerous recordations in the state court action. An analysis of Floch's claims against Chase and Wilson in this suit would require a review of the same factual background and an adjudication of the rights of the same parties as was undertaken by the state court. The court submits that under the transactional standard as adopted in Creech, the third element of *res judicata* is satisfied here.

The final *res judicata* requirement is that the underlying judgment be final and on the merits. In Tennessee, courts have held that summary judgment is considered a final judgment on the merits. Grigsby v. Univ. of Tenn. Med. Ctr., No. E2005-01099-COA-R3-CV, 2006 WL 408053, at *5 (Tenn. Ct. App. Feb. 22, 2006) (citing Hollins v. Covington Pike Chrysler-Plymouth, Inc., No. W2002-00492-COA-R3-CV, 2002 WL 31895720, at *2 (Tenn. Ct. App. Dec. 23, 2002)); see also Byrd v. Hall, 847 S.W.2d 208, 210

(Tenn. 1993). Further, "[a]s a general rule, a trial court's judgment becomes final thirty days after its entry unless a party files a timely notice of appeal or specified post-trial motion." Creech, 281 S.W.3d at 377 (citing State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996)). The Flochs did not appeal the state court judgment, and thus the court concludes that the state court's grant of summary judgment was final and on the merits. Therefore, the court concludes that the doctrine of *res judicata* applies and bars Floch's suit. It is recommended that Floch's complaint be dismissed.

### III. RECOMMENDATION

For the reasons above, it is recommended that Chase's and Wilson's motions be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 13, 2015
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**